HEARD APRIL TERM, 1873.

## Knox & Gill vs. Railroad Company.

The charter of a railroad company authorized it "to charge for the transportation of passengers at a rate not exceeding 7½ cents per mile, and for the transportation of goods by weight, not exceeding 50 cents per 100 pounds per 100 miles:" *Held*, That for heavy articles the company could only charge for the actual distance of transportation at a rate not exceeding 50 cents per 100 pounds per 100 miles.

Before MELTON, J., at Kershaw, October Term, 1872.

This was an action by Knox & Gill, plaintiffs, against the South Carolina Railroad Company, defendants, to recover back money paid for freight under protest.

The case was briefly this: Between the 22d September, 1869, and the 20th May, 1870, the defendants transported for plaintiffs, over defendants' railroad, from Kingsville to Camden, a distance of thirty-seven miles, a quantity of goods, and charged for the same by weight at a rate which was not in excess of that allowed by their charter, if they were entitled to charge for thirty-seven miles of transportation at a rate not exceeding 50 cents per 100 pounds, but which was in excess of the rate allowed by the charter, if they could only charge for the actual distance at a rate not exceeding 50 cents per 100 pounds per 100 miles; and during the same period they transported for the plaintiffs, from Camden to Kingsville, over the same road, four hundred and eighty-eight bales of cotton, of the average weight of 450 pounds, and charged for the same, by weight, at $1.50 per bale. The plaintiffs paid the amounts charged under protest, and brought this action to recover back the excess, if any, over and above such amounts as the defendants were entitled to charge by the provisions of their charter.

By the terms of the charter the defendants were entitled to charge "for the transportation of goods by weight, not exceeding ·

fifty cents per one hundred pounds per one hundred miles," and the question was whether the defendants, as they contended, had the right to charge 50 cents per 100 pounds for any distance less than 100 miles, or whether, as plaintiffs contended, the rate should be in proportion to the actual distance, but not to exceed 50 cents per 100 pounds per 100 miles.

The case was tried by the Judge without a jury.

His Honor sustained the construction of the charter contended for by the plaintiffs, and referred it to a Referee to ascertain the amounts paid by plaintiffs in excess of the amounts the defendants were entitled to charge according to his construction of the charter. The Referee reported the amount due to plaintiffs, inclusive of costs, at $955.71, and the report having been confirmed, judgment was entered thereon for plaintiffs.

The defendants appealed on the following grounds :

I. Because, it is respectfully submitted, that His Honor erred in deciding that " the statutes prescribe a rate of freight to which defendants are limited per hundred pounds per hundred miles, (fifty cents,) and at the same rate for any greater or less distance," when, in fact, such restriction was only imposed by the original charter, which has been repealed in this behalf, and appears in none of the amendments thereof.—8 Stat., 380, 384, 484.

II. Because His Honor erred in deciding that the charge of fifty cents per hundred pounds per hundred miles " applies to distances under 100 miles, as was explicitly enacted in the original charter, (8 Stat. 354,) above recited," which is " nowhere explicitly repealed in that particular," since the A. A. 1828, Sec. 11, (8 Stat., 360,) establishes a different tariff of charges, and expressly repeals the original charter in this behalf, " so far as the provisions thereof are in anywise repugnant to this Act."—Sec. 20, 363.

III. Because, therefore, His Honor erred in deciding that the original charter is still of force, as to the *pro rata* charges established thereby.

*Shannon*, for appellants :

His Honor the Circuit Judge finds, as matter of law, " that the statutes prescribe a rate of freight per hundred pounds per hundred miles, and at the same rate for any greater or less distance."

Having before found the fact that the appellants had exceeded these rates in their dealings with respondents, and that respondents had paid those charges under protest, his natural conclusion was the further finding that the amount in excess so paid should be refunded.

Is it true that the statutes prescribe such a rate of freight? His Honor admits that the question "is not free from difficulty," but proceeds, thereupon, to solve it by two propositions, neither of which, it is respectfully submitted, are tenable. He says "the reason of the thing would seem to apply to distances under one hundred miles." I entirely dissent; all the difference exists in full force—universally recognized—between wholesale and retail business. The original charter (A. A. 1827, 8 Stat., 354) was a hurried, short and imperfect statute, so much so that in forty days the same Legislature substituted another Act (8 Stat., 360) for this Act—repeals everything in the prior Act repugnant to this Act. The freight clause is re-enacted almost *totidem verbis*—markedly omitting the words "and at the above rate for any greater or less distance." Now, in the construction of this clause, it is important to remember that the same Legislature passed both Acts ; that they meant to express something, when they used these words, and, when they were re-enacting the same clause, meant to withdraw that expression when they omitted them ; and they make that more clear when they declared the repeal of the first mentioned statute. And for what reason? Because, in the hurried preparation of the original charter, the mind of the Legislature was directed to the towns of Hamburg, Columbia and Camden, the three termini, then the three important towns of the interior of the State, at the head of navigation, respectively, of the Savannah, Congaree and Wateree, and distant from Charleston 135, 125 and 140 miles, and not expecting the important increase of way-side towns and way-side freights. When reflection suggests these things, the restriction is omitted, and is never again repeated in all the subsequent changes of freight charges.

Kingsville was then, and for many years, a wilderness. It could not be anticipated that a railroad from Baltimore would pour its freights out there, and demand of these appellants that they should load and run cars at an enormous expense, to carry freight at a loss to the company, for the benefit of cities and railroad corporations out of the State.

Is there no reason that the rate of charges should be higher for expense of loading and unloading cars, getting up steam, and the countless items of expense, which are but little increased by a little additional distance?

But, however unreasonable it might be to say so, if these appellants live, move and have their being under the original charter, (8 Stat., 354,) which says " at the same rates for any greater or less distance," reason would be silent, for the law would compel obedience.

It is recognized in English law that, under their statutes which limit tonnage for railway trains *pro rata*, according to distance, the company may still charge something reasonable, in addition, for loading and unloading goods, when they perform that service. (*Parker* vs. *Western Railroad*, note 151, Red. on Rail., Vol. 2, p. 70.) It is universal with railroad companies to charge higher rates for shorter distances.

It was proved at the trial that the schedule of through rates conformed to the statutory requirements, and that the way rates were published by the appellants, and it is evident that respondents were informed of them, for they were protesting against them all the while.

Even now a railroad, running to this capital, advertises to carry cord-wood at $3 for the first ten (10) miles, and 25 cents for every additional ten miles. The respondents could have carried their goods and wares to and from Baltimore *via* Charleston as cheaply and expeditiously for themselves, and with convenience to appellants; but they unreasonably demand that appellants shall load and unload for them at Kingsville, and receive an insignificant portion of compensation.

His Honor holds that the provision prescribing the same rates of freight " for any greater or less distance " is " nowhere explicitly repealed in that particular." The " *difficulty*," just alluded to, does not seem to be avoided; why all these qualifying words accompanying a negation of repeal? If repealed at all, it answers our purpose, whether done generally or particularly. It is certain that "an Act to amend " the Act of December, 1827, (8 Stat., 354,) was passed on the 30th January, 1828; that in Section 11, (8 Stat., 360,) the charges allowed were re-enacted, and the restricting words omitted, and in Section 20 (8 Stat., 363,) the former Act was repealed, so far as repugnant, and such words of restriction are never

again introduced in any of the changes of freight tariffs, (8 Stat., 380, 384, 484.)

Section 11, 8 Stat., 360, the additional charge for loading, storage, &c., is recognized clearly and explicitly.

*Rion*, for appellants:

The points involved in the appeal are of great importance to many of the railroads in the State, so much so that it is thought by many that an adverse decision on one of the points raised would cause the local business of railroads to become a *heavy expense* instead of a revenue to them. As the Charlotte, Columbia & Augusta Railroad Company is one of the corporations especially affected, their interest constitutes the motive of my participation in this case.

I. I would suggest to the Court that the construction of the Section of the charter ought to be made in the light of the usage of the commercial world, and of the carrying business that obtained at the time of its enactment.

In this case the Court has not this light.

To explain my meaning, and to illustrate the importance of the suggestion, I would state that at the trial of another case, involving precisely the same issues as this, certain issues of fact were submitted, and the following were the findings, based on the testimony of witnesses, one of whom had been engaged in the carrying trade for some thirty years in different parts of the world, another for some twenty years in the United States, and a third had been President of railroads for years. I call attention especially to the 12th and 13th findings:

1. "That a cotton bale is an article easily capable of being measured in cubic feet."

2. "That eighteen bales of cotton, averaging 417 pounds, were measured at the Chester depot, in April, 1871, and averaged 29 2–10 cubic feet measurement."

3. "That the cotton shipped at Chester, of the crop of 1870, would average at least 27 cubic feet measurement, certainly over 24 cubic feet."

4. "That cotton is not safely transported, on railroads, except in box cars."

5. "That a box car will only contain from 26 to 28 bales, which, at an average of 433⅓ pounds, would weigh from 11,267 to 12,133 pounds."

6. "That the weight capacity of a box car is, 16,000 pounds; and 18,000 pounds not an unusual load."

7. "That cotton not in 'compressed bales' is, by commercial usages, regarded rather as an article of bulky freight than heavy freight."

8. "That the usage of the Charlotte, Columbia & Augusta Railroad, and of connecting railroads and steamer lines, is to charge on all freights, with a few exceptions, (such as lumber, live stock, brick, coal, tan bark, wheeled vehicles, and a few other articles,) by weight, but assigning different articles to different classes, for which different rates are charged, according to the bulk or measurement of said articles; and this classification is almost identical on said railroads and steamers."

9. "That the usage last mentioned has virtually obtained before and since the year 1847."

10. "That this usage obtains generally throughout the United States."

11. "That the defendant's road and its predecessor, the Charlotte & South Carolina Railroad, has always charged on cotton with reference to its bulk or measurement, the practice having been at first to charge so much per bale, without regard to weight, and afterwards, when it was found that the bales were being increased in weight and bulk, to adopt 425 pounds as the standard weight of a bale, and to charge for excess of weight proportionally."

12. "That the cost in transporting freight is *not in proportion to the distance*, but depends chiefly upon the receiving, storage, loading and unloading, provision of adequate motive power, rolling stock, train hands, depot agents, laborers, clerical force, and blanks and books, which are *nearly as great for distances under a hundred miles as for a hundred miles;* the commercial usage being for connecting roads to allow for the transfers of freight the compensation of from *forty to sixty miles* transportation."

13. "That the cost of transportation by the Charlotte, Columbia & Augusta Railroad from Chesterville to Charlotte, N. C., a distance of 45 miles, is *not much less* than the cost of transporting the same article from Columbia to Charlotte, a distance of 110 miles."

14. " That at the time of the shipment of the cotton, the subject-matter of these actions, one dollar of gold was worth at Chesterville one dollar and twelve cents paper currency."

That the Court should have had this light.in the construction of the Statute, *vide* Sedgewick on Stat. and Cons. Law, pp. 355, 356, 358; 1 Term, 728; 1 La. Anna, 419; Harper L., 102; 5 Iredell Eq., 71.

II. The Section of the Act presented for construction is as follows, (8 Stats., 36C):

" And be it further enacted, by the authority aforesaid, That the said South Carolina Canal and Railroad Company shall at all times have the exclusive right of transportation or conveyance of persons, merchandise and produce over the railroad and railroads and canals to be by them constructed, while they see fit to exercise the exclusive right : *Provided*, That the charge of transportation or conveyance shall not exceed thirty-five cents per hundred pounds on heavy articles, and ten cents per cubic foot on articles of measurement, for every one hundred miles, and five cents per mile for every passenger."

This Act (p. 363) repeals provisions of former Act " so far as the provisions thereof are *in any wise repugnant* to this Act."

The former Act provides (8 Stats., 354):

" The said company shall, at all times, have the exclusive right of transportation on all the several railroads to be by them constructed : *Provided*, The charge for the transportation of goods, produce, &c., shall not exceed thirty-five cents per hundred pounds on heavy articles, and ten cents per cubic foot on articles by measurement, for every one hundred miles, and five cents per mile on every passenger, and at the above rates for *any greater or less distance.*"

The omission of the words " and at the above rates for any greater or less distance," is clearly significant of the intention of the Legislature to relieve the company from the duty of *prorating.*

This omission operates as a *repeal* of the words omitted.—*Moore* vs. *Mausert et. al.,* 4 Sickles, (49 N. Y.,) 335 ; 1 Pickering, 45 ; 31 Maine, 34.

III. The construction contended for by the respondents is not *reasonable.*

This would only allow about one-third of a cent for 100 pounds for one mile for transportation, stoppage of car, loading, unloading,

clerical labor, &c., or about 55 cents for a *full car* load. Many stations are from four to ten miles apart. This construction would become more glaringly unreasonable when the weight would be less than 100 pounds.

IV. The words of the Section do not plainly express that a pro. rating for each mile is required as to freights, while they do as to passengers. *Expressio unius est exclusio alterius.*

The reason of the difference is obvious, for the passenger loads and unloads himself, and requires no weighing or listing; and, yet, on many railroads, (as in 11 Stats., 536,) " an extra charge of fifty cents for taking up and putting down each person" is allowed.

V. If the construction contended for by the respondents be correct, then the Legislature would be guilty of the gross injustice of providing rates for the South Carolina, and some other railroads, that would make their local business a *ruinous* one, while other railroads are allowed reasonable compensation, and some *expressly* from *four* to *twenty-five* times as much as the South Carolina Rail. road Company.

If the Court will look at the Sections in the different Acts providing rates, this will be very striking. I give the length of each road where it has a bearing upon the question of construction :

Colleton R. R., (25 miles), 11 Stat., 495.

Kings' Mt. R. R., (22 miles), 12 Stat., 94.

Barnwell R. R., (13 miles), 11 Stat., 477.

Barnwell R. R., (13 miles), 8 Stat., 426.

Edgefield R. R., (24 miles), 8 Stat., 401.

Sumter and Darlington R. R., (45 miles), 8 Stat., 445.

Spartanburg and U. R. R., (68 miles), 11 Stat., 484.

Spartanburg R. R., 11 Stat., 565.

Greenville and Columbia R. R., 11 Stat., 328.

Pendleton R. R., 12 Stat., 109.

Savannah River Valley R. R., 12 Stat., 190.

Blue Ridge R. R., 12 Stat., 205.

Newberry and Chester R. R., 12 Stat., 263.

Branchville and Savannah R. R., 12 Stat., 270.

Charleston and Savannah R. R., 12 Stat., 276.

N. E. R. R., 12 Stat., 131.

Chatham R. R., 14 Stat., 71.

Junction R. R., 12 Stat., 282.

Manchester and Augusta R. R., 14 Stat., 365.

Greenville and French Broad R. R., 12 Stat., 493.

Air Line R. R., 12 Stat., 510.

S. C. Central R. R., 14 Stat., 260.

Port Royal R. R., 12 Stat., 661.

Wateree and N. C. R. R., 14 Stat., 262.

Georgetown R. R., 12 Stat., 727.

Buford's Bridge R. R., 12 Stat., 892.

Bennettsville and S. H. R. R., 12 Stat., 949.

The conclusions to which these Sections bring the mind is irresistible, and against the construction contended for by respondents.

That "the general system of legislation upon the subject-matter of a statute may be taken in view, in order to aid the construction of a particular statute relating to the same subject, *vide Fort* vs. *Burch,* 6 Barbour, 60–74; 3 Mass., 17, 296, 418; 10 Pickering, 235; 2 Bailey L., 554; 9 Cowen, 507; 15 Johns, 380; 19 Vt., 230; 4 Flor., 445; 12 N. H., 284.

VI. Our reports contain no case where any one has made the points raised in this case, and acquiescence in the practice (which is notoriously as that now complained of) under a statute, is good evidence of its construction.—*McKeen* vs. *DeLancey's Lessee,* 5 Cranch, 22; *Fort* vs. *Burch,* 6 Barbour, 73.

VII. The *reason* why the Legislature should limit rates for 100 miles, and not for less distances, becomes plain, if we consider—

*a.* Finding 12 and 13, *ante.*

*b.* That this limit applies, though not ratably, to all less distances, *e. g.* 90, 80, 70, or 60 miles.

*c.* That for *short* distances, if the railroad charge excessively, *wagon transportation* will come in competition, and relieve shippers; while for distances like 100 miles, and approaching thereto, this competition of wagon transportation would not protect shippers, and hence the Legislature provides a limit of charges that will afford the desired protection for such shippers.

*Kershaw,* for respondents :

The original charter of the South Carolina Canal and Railroad Company grants the exclusive right of transportation on the several roads to be constructed by them : "*Provided,* The charge for transportation of goods, produce, &c., shall not exceed thirty-five cents per hundred pounds on heavy articles, and ten cents per

cubic foot on articles by measurement, for every one hundred miles, and five cents per mile on every passenger, and at the above *rates* for any greater or less distance."—No. 2,417, 8 Stat., p. 354, § 4, year 1827.

This Act was amended in the following year, (No. 2,442, *Idem*, p. 355,) and the same language quoted above, from the original charter, was employed to define the rates of freight, except the concluding words, "*and at the above rates for any greater or less distance*," which were omitted.—*Idem*, p. 360, § 11.

The same Act contains a repealing clause in these words: "The said Act," (meaning the original charter,) "so far as the provisions thereof are in anywise repugnant to this Act of incorporation, shall be, and the same is hereby, repealed."—*Idem*, p. 363, § 20.

The question made is: Did the Legislature intend, by the Act of 1828, to overturn the principle so plainly established in 1827, that the rates of freights established should apply to a greater or less distance, and to establish a limit to the rates to be charged which should only apply when the distance could be divided into even hundreds of pounds and miles?

The Section under review, (§ 11, p. 360,) gives the company power to farm out their right of transportation, "subject to the *rates* above mentioned." Also, to "use and employ any sections of their railroad," subject to the *rates* before mentioned, before the whole shall be completed, "and in any part thereof which may afford public accommodation for the conveyance of persons, merchandise or other produce." "Also, to lay off and construct * * * branches so as to communicate with the waters of the Savannah River, or navigable waters of the Edisto or its branches, subject to the aforesaid *rates* of transportation."

It is evident, from these extracts, that the Legislature intended to establish *rates* of transportation of passengers and goods; that such *rates* were to be limited. That the measure of such limitation was made "35 cents per hundred pounds per hundred miles, on heavy articles, &c."

And, that this measure of limitations should apply to "*any sections*" of the road, before the whole was completed, whether the same should be long or short, or to any *branches* to the Savannah or Edisto Rivers, which were, of necessity, to be less than one hundred miles in length.

In what sense is the word " rate " employed in the statutes ?

" *Rate,* from *ratus,* p. p. of *reri*—to reckon, degree, standard, proportion, ratio, value, price, rank, movement, as fast or slow and the like."—Webster's Dictionary.

" *Ratio,* from *reri, ratus,* to reckon. In mathematics, the relation which one quantity or magnitude has to another of the same kind as expressed by the quotient of the second divided by the first. Thus : the ratio of 3 to 6 is expressed by 6–3 or 2. Of *a–b* by *b.* Some writers, less properly, consider *ratio* as the quotient of the first quantity divided by the second. The term *ratio* is sometimes applied to the difference between two quantities, as, to their quotient, in which case, the former is called arithmetical *ratio,* and the latter geometrical *ratio.* The name " ratio " is sometimes given to the Rule of Three in arithmetic."—*Id.*

" 2. Hence, fixed relation of number, quantity or degree, *rate,* proportion, as ratio of representation."—*Id.*

"*Pro-rate,* according to a certain part in proportion, to divide or distribute proportionally, to assess *pro rata.*"—*Id.*

It is evident, from these definitions, that the primary and most obvious meaning of the word *rate* is that of proportion or *ratio.* It is not price or value, but the rule or means whereby price or value may be computed. Charges for transportation are called rates, because they are fixed according to certain proportions between quantity and distance. They are charged according to a certain *ratio* between quantity and distance. That *ratio* or *rate* becomes a standard whereby to ascertain the price to be paid for transportation of any given quantity to any given distance—a rate or proportion required to be observed by the railroad company in ascertaining the amount to be charged for such service in any given case.

. This is further evidenced by the consideration that the Act of 1827, the first railroad charter ever granted, laid the foundation of a system, and established for the first time the principle by which railroads should be governed in their charges for freights. That principle necessarily required to be stated in the most exact and plain terms, because it was a new subject, and could not be interpreted by reference to any thing that had preceded it in the legislation or usage of the State. The principle established was, that the charges for freight should be according to a certain proportion or ratio of weight and distance—a price *per centum* of pounds, *per centum* of miles, and it was distinctly declared that the same propor-

tion should be observed in assessing the price of freight for a greater or less distance. The principle having been thus clearly defined in 1827, in the following year, in an Act amendatory of the former, amplifying and defining the powers and duties of the company, the Legislature re-enacted the clause granting exclusive rights of conveyance, and the *proviso* limiting the charges for freight, in the same language as before, but omitting the words, "*and at the above rates for any greater or less distance.*" If the word *rate* means what we have assumed to be its original and proper signification, (and there is nothing to show that it was used in any other sense,) then the words contained in the former and omitted in the latter were surplusage, and properly omitted, without any purpose of changing the sense of the language employed to define the rate. The language is, "thirty-five cents *per* hundred pounds for every hundred miles." If, in the first Act, there had been nothing else, the meaning of the expression might have admitted of argument, but when the Legislature went on to define exactly their meaning by adding the words "at the same rates for any greater or less distance," they left no room for doubt. In the next year they simply omitted the words last quoted, and repealed the former Act only so far as the same was repugnant to this. Were the words last quoted repugnant to the sentence that preceded them, and which it was their office more distinctly to define? Clearly not. The Legislature, in the first Act, using a new form of expression in relation to a subject, thought it best to add a note, as it were, clearly defining the meaning of the form of expression used. Is it to be held, that in their subsequent use of the same language, in relation to the same subject-matter, they used them in an entirely different sense, because they omitted the note of explanation added in the former instance? Such a rule would violate the laws of reason as well as the rules of construction, as contained in the following authorities.

Where the Legislature substitutes one Act for another on the same subject, it is not to be presumed that they intended to use terms in a sense different from that in which they were used in the prior Act.—*Roosevelt* vs. *Maxwell*, 3 Blatchford, C. C. Rep., 391.

Several Acts, in *pari materia*, are to be construed as one statute in explaining their import.—*Patterson* vs. *Winn*, 11 Wheaton, 385; *U. S.* vs. *Hewes*, Crabbe, 307; *DuBois* vs. *McLean*, 4 McL., 489; *U. S.* vs. *Collier*, 3 Blatchford, C. C., 325; *Black* vs. *Scott*, 2 Brock, 325.

Recourse may be had in construing a statute to a proviso which has been repealed by a subsequent Act.—*Bank for Savings* vs. *Colleton,* 3 Wall, 495.

If the grant of a franchise admits of two constructions, that is to be taken which least restricts the public rights.—*Miller* vs. *St. Clair Co.,* 8 Howard, 569; *Perrine* vs. *Chesapeake and Del. Canal,* 9 H., 172; *Rice & Minn* vs. *N. W. R. R. Co.,* 1 Bl., 360; *Griffing* vs. *Gibb,* 1 McAlister's Rep., 212; *Minturn* vs. *Lance,* Ibid, 370.

The cases are cited from Brightly's Dig., Tit. Stat., 4.

The latter Act, in the same clause, enacts that the company may " use or employ sections of their intended railroad, subject to the *rates* before mentioned, before the whole shall be completed, and in any part thereof, which may afford public accommodation for the conveyance of persons, merchandise or produce; and to lay off and construct and put in operation and use any branch or branches of the said railroad, so as to communicate with the waters of the Savannah River, or navigable waters of the Edisto or its branches, *subject to the aforesaid rates of transportation."* Inasmuch as any such section of the road as the Legislature contemplated in the passage quoted might have been made under a hundred miles, and any branch to the navigable waters of the Edisto *must* be under a hundred miles in length, and as the same rates of transportation were to apply to such shorter distances, it is certain that the Legislature, in the last Act, meant precisely what they did in the first Act, to wit: That the same rates or proportions of freight should be observed for a longer or shorter distance, and there was, consequently, no repugnance in this particular, between the two Acts, and the former remained *quoad hoc* unrepealed, the latter only repealing the former so far as they were repugnant.

The last Act on this subject, No. 2,764, 8 Stats., 484, year 1838, fortifies the construction contended for. It is entitled " An Act to increase the rates of transportation in certain cases," &c., and enacts that the said company be " authorized to charge for the transportation of passengers at a rate not exceeding 7½ cents per mile, and for the transportation of goods, by weight, not exceeding fifty cents per hundred pounds per hundred miles." The purpose of the Legislature, in this Act, was declared to be to increase the then existing rates of transportation, and it was accomplished by declaring the *rate* of compensation to which they should be limited for the transportation of passengers per mile, and of goods, by weight, per hun-

dred pounds per hundred miles. In this there is no repealing clause, and the former statutes stand with this, unless repealed by necessary implication, and none such arises; but, on the contrary, the language employed shows that the Legislature understood that they had established a *pro rata* system of charges adapted to all distances and all weights, with which they propose to interfere merely by increasing the compensation, leaving the mode of assessing the charges unchanged. A statute can be repealed only by an express provision of a subsequent law, or by necessary implication; the two must be so repugnant that they cannot stand together or be consistently reconciled.—See Brightly's Dig., Tit. Stat., 2, § 17, 8.

The argument on the other side leads to the absurdity that the Legislature limited charges for freight only in those cases where the transportation was of *even hundreds of pounds over even hundreds of miles*, and left them unlimited in all other cases. The reasoning leads inevitably to this conclusion.

As to the assumption that the company can charge 50 cents per hundred pounds for any distance less than one hundred miles, it has no foundation in anything in the Act, but is fanciful entirely. It would be just as reasonable to say that the company could charge 50 cents for one pound carried one hundred miles. The Legislature either established a rate, upon a uniform principle of proportion of weight and distance, applicable to all distances and all weights, or they provided *only* a rate for the transportation of even hundreds of pounds weight, over even hundreds of miles distance, which is an absurdity.

It is argued that the rate imposed would be unreasonably small compensation for transportation over short distances; that it would not pay for the loading and unloading. Without admitting the statement, it is sufficient to say, that if the construction be clear, the Court cannot control it by any considerations of expediency. Moreover, the Legislature furnished the company ample powers to protect itself against the supposed inadequacy of compensation for loading and unloading, by giving them power in the same Section of the Act of 1828 (8 Stat., 360,) to " charge such just and reasonable terms of compensation for storage and labor as they may by rule establish (which they shall cause to be published,) or as may be fixed by agreement," &c.

As to the point that the company may have charged cotton by measurement instead of by weight, there is no such point in the

case at all, and the Court cannot assume facts and supply the omission, but it is sufficient to say the company did choose to classify cotton otherwise, and must stand to it.

Having established that the amount of freight exacted of him for the services rendered by the company were in excess of the limits imposed by law, and that they were paid under protest, the plaintiff is entitled to the judgment.—*Kenneth & Gibson* vs. *S. C. R. R. Co.*, 15 Rich., 306.

*Rion*, for appellants, in reply :

The word "rates" simply means an amount arrived at after thinking, and is equivalent to "amount," "charges," or "amount of charges." The word rate, ordinarily, and in common usage, implies a multiplication or a multiplier, and the multiplier is generally characterized by having the latin word *per* prefixed to the unit of the denomination of the multiplier. In some cases there are two multipliers, in which case the "per" is repeated, as in "interest at the rate of 7 *per centum per annum.*" It is frequently used, however, in statutes where there is no multiplication implied.—Webster's Dictionary; Acts to establish certain Roads, Bridges and Ferries— No. 2,790, 11 Stats., p. 82, year 1839, read pp. 83 and 85 ; No. 2,818, 11 Stats., p. 124, year 1840; No. 2,841, 11 Stats., p. 157, year 1841 ; No. 2,869, 11 Stats., p. 226, year 1842; No. 2,905, 11 Stats., p. 267, year 1843 ; No. 2,936, 11 Stats., p. 299, year 1844; No. 2,971, 11 Stats., p. 347, year 1845 ; No. 2,984, 11 Stats., p. 369, year 1846; No. 3,026, 11 Stats., p. 453, year 1847 ; No. 3,062, 11 Stats., p. 530, year 1848, read p. 532; No. 3,099, 11 Stats., p. 611, year 1849; everywhere "rates" of toll=charges for toll; Act of 24th May, 1870, 16 U. S. Stats. at Large, p. 133, (1870), "with right to run public carriages thereupon, drawn by horse power, receiving therefor a *rate* of fare not exceeding six cents a passenger for any distance on said road."

8 Stats., p. 401, "charge" and "rates."
8 Stats., p. 412, "the charge" and "rates."
8 Stats., p. 426, "charge" and "rates."
8 Stats., p. 445, "charge" and "rates."
8 Stats., p. 470, "rates."
11 Stats., p. 391, "rates."
11 Stats., p. 477, "rates" and "charge."
12 Stats., p. 94, " rates."

In this Section the word rates has its full signification given when the statute says "per hundred pounds" and "per cubic feet."

Sept. 13, 1873. The opinion of the Court was delivered by

WILLARD, A. J. It is conceded that the authority of the appellants to charge as common carriers for the conveyance of merchandise is limited by statute. The limitation stood under the Act of 1828, (8 Stat., 355, Sec. 11,) as follows: "*Provided,* That the charges of transportation or conveyance shall not exceed thirty-five cents per hundred pounds on heavy articles, and ten cents per cubic foot on articles of measurement, for every hundred miles, and five cents per mile for every passenger." These provisions were substantially re-enacted in 1835, (8 Stat., 412, Sec. 20,) but were modified in 1838, (8 Stat., 484, Sec. 1,) as follows: "That the South Carolina Canal and Railroad Company be, and they are hereby, authorized to charge for the transportation of passengers at a rate not exceeding seven and one-half (7½) cents per mile, and for the transportation of goods, by weight, not exceeding fifty cents per hundred pounds per hundred miles."

The appellants claim that these provisions authorize them to charge the rate fixed by law for one hundred miles for any distance less than one hundred miles.

The Circuit Court held the contrary, placing its decision on the ground that the statute intended that the rate should be applied to the actual number of miles of carriage, a portion of one hundred miles entitling them to a corresponding portion of the statute allowance. The force of the appellants' argument rests on the idea that the design of the statute was to fix a fair price for the carriage of goods and passengers. If such was the intent of the statute there would be some force in their argument as to the inequality of applying the same rate of charge to short distances that is applicable to long, for it is evident that whatever may be the distance carried, the cost of shipment and discharge must be deducted from the sum chargeable for carriage, before the actual compensation for carriage can be ascertained, and as the cost of shipment and discharge may be assumed to be the same for all distances, the net result shows a less amount per mile for short distances than for long, and a consequent diminution of profit.

But, evidently it was not the intent of the statute to fix the charge for carriage as between the carrier and shipper, but merely

to prescribe a limit beyond which the carrier should not go in making a contract of carriage. There is nothing in the statute in question to distinguish it from a large class of statutes limiting the amount chargeable by persons exercising callings subject to legislative regulations, and the policy of such statutes is to prevent excessive charges, but to leave the actual sums charged to be affected within the prescribed limits by the economic rule of supply and demand.

It must be assumed that the Legislature took into consideration, in fixing the limit of charge, all that properly appertains to the nature of such an inquiry. It must, therefore, be assumed that they fixed the rate in question in full view of, and with full allowance for, the fact that exigences would arise, either as affecting the carrier peculiarly or the community at large, rendering it necessary and proper that charges should be made at such times in excess of what would be reasonable in ordinary times, and the further fact that cases would arise where the carrier would not make his calculated profit, but might realize a loss, owing to the small quantity of freight carried, the shortness of the carriage, or some other unfavorable circumstances. In a word, it must be assumed that the rate fixed was considered, at the adoption of the statute, as in excess of the rate that under ordinary circumstances should be paid for such services. If it could be shown that since the adoption of the statute the cost of carrying merchandise had increased, that fact would not affect the construction of the statute, but would be a matter for legislative consideration solely.

It is evident, therefore, that, in construing the statute, in any case that may arise under it, we need not consider whether its operation in the given case works favorably or unfavorably for the parties concerned, but we must assume the rule to be arbitrary, and confine our inquiries to the question whether it has been violated in respect of the terms in which it is laid down.

What we have to consider in the present case is, what is the unit to which the statute intended the rate should be applied? Is it, in the case of freight, the mile, or the one hundred miles? In the case of passengers, the mile is made the unit by the terms of the statute. Was there, then, a different intention as it regards merchandise. It is true that the rate as to merchandise is fixed relatively to one hundred miles, but it does not necessarily follow that one hundred miles is to be regarded as the unit.

The natural and ordinary conclusion from the terms, apart from any particular intent that would control such conclusion, would be that the mile was intended as the unit. We are accustomed to refer in all matters involving transportation, whether of passengers or merchandise, to the mile as the unit or standard of measure. It is both a legal standard and convenient in a commercial point of view. A rate per mile is intelligible and convenient, and at once suggests the result of carrying for a greater distance. Fractions of a mile are of so little importance that they do not give rise to controversies. On the other hand, making one hundred miles the unit at once makes the questions arising out of fractions of that distance of sufficient pecuniary importance to give rise to legal questions, as illustrated by the present case. The object of a rate, in such cases, is to proportion charges according to distance. As the distance between any two of the *termini* of the defendants' road is less than two hundred miles, the assumed unit will only enter once into any of those distances, having a variable fraction. It so happens, on that assumption, that there are but two possible charges on one hundred pounds of merchandise, on that road, for any distance carried, namely, fifty cents and one dollar. If one hundred miles, or a less distance, is traversed, it is fifty cents ; if that distance is exceeded, it is one dollar, and cannot exceed that sum. Now, when it is considered that the defendants' road connects cities, villages and stations varying in distance from each other from a few miles to upwards of a hundred, it is obvious that, if the intention of the statute was to proportion charges for carriage according to the distance carried, that object is wholly defeated by a construction that adopts one hundred miles as the unit to which to apply the rates. On the other hand, assuming a mile to be the unit, the object of the statute is completely attained, and the charge of the defendants is measured by the distance carried.

The reference to one hundred miles may be readily accounted for without assuming that that distance was intended as the unit to which the rate was to be applied. If the rate for merchandise, of one hundred pounds weight, had been stated in terms of one mile instead of one hundred miles, it would have amounted to a fraction of a cent, and in a form far less convenient for readily computing the cost of carriage. The statute, in this respect, follows a very common method suggested by commercial convenience.

That such was the sense intended is evident from the mode in

which the rate as to quantity is stated. It would not be contended that because a rate is given in terms of one hundred pounds that the unit was not a pound. Such a construction would be impracticable and unmeaning. It is obvious that, in the last named instance, the quantity indicated for the purpose of stating the rate was not intended to ascertain the unit for applying the rate. It is clear that the same intention guided the Legislature in the employment of the terms by which they express that rate relative to distance that influenced them in stating it relative to pounds.

Such being the direct meaning of the statute, it is not necessary for us to consider the effect of the omission of certain words contained in a previous statute on the same subject, which, if retained, would have obviated the necessity of a resort to construction, for such an omission cannot weigh against the clear language and intent of the statute.

It is evident, by a reference to other parts of the statutes above referred to, that the Legislature regarded the sums allowed by way of charge for transportation as indicating a rate of charge. The title of the Act of 1858, which increased the rate on heavy merchandise from thirty-five to fifty cents, expresses this idea by declaring the purpose of the Act to be " to increase the rates of transportation on the Charleston and Hamburg Railroad in certain cases." Section 1 of that Act assumes in terms to establish a rate in the very provisions increasing the charge to fifty cents; the same intention is made apparent by the following clause of the eleventh Section of the Act of 1828, (8 Stat., 360): " And it shall be lawful for the said company to use or employ any section of their intended railroad, subject to the rates before mentioned, before the whole shall be completed." It also authorizes certain branch roads, " subject to the aforesaid rates of transportation."

It is there evident that the provisions in question were intended to establish a rate of charge, and as that rate is based on distance, it must afford means of proportioning charges according to distances. It is evident, therefore, that these provisions cannot support the constructions attempted to be put upon them by the appellants.

The construction of the Circuit Court was free from error, and the appeal must be dismissed.

*Moses,* C. J., and *Wright,* A. J., concurred.